Mr. Harris, if you're ready to proceed, you may do so. Thank you very much. The Court's improper grant of summary judgment was based on a misapprehension that plaintiff's review of her wage statements foreclosed her claim for off-the-clock work done on August 5, 2004, immediately after she was hired. Plaintiff never received a wage statement for that first day of her work. Her first day of work for a client wasn't until the end of August. Now, at the end of August, she received a wage statement for the work she'd done for Warner Brothers. But she never filled out a time card, and she never received a wage statement for the work she did on August 5, 2004, during her initial hour-long orientation process. So this is a – this – your case boils down to the one-hour preparation time. No, Your Honor. I want to focus initially on this aspect of it. But there – this is an important point, because the district court said, well, she – she couldn't – I took that point. Yeah. I understand. We have more points than that, though. Like what? Okay. What? Like what? If I could have just one more minute on this point, because I think it is – You can have an hour, but that's the – no, I'm kidding. You've got – I'm kidding. You've got 15 minutes, so I guess I'm trying to figure out if that's your best point. Well, that's the factual point that I think requires – the rest of it – I think are covered by the legal argument in the brief, and I am going to go over some of those. But this is one point that wasn't clear in the briefs, I think. And so that's why I raised it first. And that is that the district court said you can't claim you're off-the-clock work because you said you reviewed your time slips, you filled out your time slips, and you reviewed your wage statements. But that didn't happen until she went to work for Warner Brothers. There were no wage statements. She wasn't asked at her deposition about this orientation time. But we will say, won't we, that the amounts paid to her were based on time sheets which she completed. That was what she said in her deposition when I read it. Yes, Your Honor. She was paid when she worked for Warner Brothers. The question is, is the temporary employee entitled to get compensated for work done when they're not at the client? Well, I understand that, but it says, from what I read in her deposition, it was pretty straightforward. Her time sheet, which she completed, was sent in, or at least in reading her deposition it seemed that that was the case, and she admitted that the amounts paid to her were based on the time sheet she completed. So, therefore, the first time sheet she completed, which should have had this hour, I guess, she didn't ever put on that time sheet. Well, if you look, Your Honor, at that time sheet, that time sheet is given to her for the time spent with Warner Brothers, and that time sheet is in the record at page 468. I saw it. And it covers the period beginning August 29th. She was never given a time sheet to fill out for the day August 4th. Your point, I didn't mean to throw you off track, but I was really trying to figure out. I understand there's more. There's a question whether she had been terminated or whatever. But on this issue of time, I can understand if an employee doesn't know that she is entitled to off-the-clock compensation, which is the hour aspect of the uncompensated time claim, the district court found it inconsistent along the lines Judge Smith has been talking about, but also found that, as I understand, she said, this late-breaking assertion contradicts plaintiff's earlier sworn testimony to the effect she received all of her wages. All right. I take your point that, well, she didn't know she was supposed to write down. She didn't know it was compensable, and then says plaintiff makes no attempt to reconcile her testimony with their current statement, nor does she present any evidence that she was not compensated for this time other than her conclusory allegation. So the district court is going on and saying, A, it seems inconsistent with her statement, and, B, it doesn't square with her burden of proof to establish a tribal issue that somehow she wasn't, in fact, compensated for that hour of time or that she actually did work a whole hour on filling these things out. And that is covered, Your Honor. And if you look at the record, pages 434 through pages 467, these are all of the materials that she had to go through, check off, and sign during that initial hour. And this is attached to her declaration with respect to the August 5th work. And the declaration was filed at the last minute just before the summary judgment, right? No, Your Honor. The declaration was timely filed. Before the summary judgment, there was objection – there were objections filed. The declaration was timely filed. There was no last-minute declaration. Where's the court calling it the late-breaking assertion? Your Honor, I have no idea, because it wasn't late-breaking, and she was not asked at her deposition, and there was no findings or proposed findings with respect to the orientation time. All the complaint says, Your Honor, under notice pleading, is that she has a claim for unpaid minimum wage, and it doesn't detail what days and how much in the complaint. But the point is that the court is wrong below where she says it's conclusory, because there's pages 434 through 467, and the first time she was asked about, did you keep track of all your time, had to do with time kept on August 29th. She was never asked that question with respect to August 5th. Did she ever make any complaint to her employer about this? Not until she consulted an attorney, and the complaint was filed here. I got the idea. That's why the district court thought it was late-breaking. Right, but I think – She was at work for several weeks, and during those time periods made no complaint, admits she was paid for everything on her time sheet, and believed her paychecks were accurate. Yes, Your Honor, but she was asked only with respect to time sheets dealing with later periods, and the employee doesn't – Does she want to represent class with respect to this one-hour orientation? Yes, Your Honor, because it builds up. And so Sperion and all temporary employers put the people through this and never compensate them even at minimum wage. Do you want to go on? And what's the evidence of how – that it takes an hour to do this form? Well, Your Honor, I think if you just look at pages 434 – I read them. You know what? A lot of people just go through and ding, ding, ding, ding, ding, and sign them. Well, that would still take quite a bit of time. Really? How much? Well, in order to compute it, Your Honor, we would then go to the reporting time statute. Then you'd have to go through in every – this is a putative class. I mean, this is not before. It's whether there's commonality. You're saying that everybody has to take a full hour, or that's just what your client took? Well, that's what my client took, but under California law, when you're called to work, you're entitled to at least two hours of pay. And so as far as the class is concerned, it would not make any difference with respect to whether they took 15 minutes to go through this or, like my client, an hour to go through it. With respect to a class, each member of the class would be permitted to receive two hours at the minimum wage. Now I am confused. Now you're saying, as a matter of law, regardless of whether she did anything here, she was called to work. Yes, Your Honor. How was she called to work? How do you – what's the predicate for called to work? Your Honor, if we review the Riley deposition, which is at the record at 725, the process is people come and are interviewed. And those who are then hired are told either they are now going to do the onboarding process and they're called to work either then or shortly thereafter to go through all of these documents and procedures and check them all off and say whether they did them. And so that happens either that day after they've been hired or shortly thereafter. Her deposition was taken. My client and the deposition of one of the defense employees, Riley, and at 725 she admits that these are done after they're hired, either the same day or subsequently. And so that – Did she in her – was she asked in her deposition whether she was – did she bring out in her deposition that she wasn't paid for this hour? No, she was asked only with respect to the work she did starting about a month later for Warner Brothers. And so she wasn't given a time card to fill out until the end of August. And what she was asked about was the Warner Brothers time card and the Warner Brothers statement. And you didn't ask her about it? No, we didn't ask her because it had not been raised in the direct examination. It had been raised in the complaint at that point. Yes, it was raised in the complaint. Wait. No, wait a minute, wait a minute. You just said it was notice pleading. I'm trying to understand. If I'm taking your client's deposition and I think that this case is about her not getting paid timely for the Warner Brothers employment and that that was what she was doing, at the time of her deposition, was it on the table that there was some claim about this start-up time? Absolutely, Your Honor, because that had been raised in the class certification papers and had been raised in the other depositions. You've got about four minutes left. If I can move to the other quick points. And this is more substantively on the legal issues. The district court erred in saying 201.3 is clarification of existing law. We've covered in our papers that you can't say it's clarification because the law was passed to protect temporary workers and there were the DLSE rulings. So the question becomes, is it retroactive? And we say it's not retroactive because of the savings clauses found in Sections 4 and 9. Just a minute. I appreciate that you want to get into the argument about whether it's clarifying or whether it isn't. But have you read Sullivan v. Kelly Service, Inc.? Yes, Your Honor. It seems to me that Sullivan v. Kelly Service, Inc. does not necessarily even go to the clarifying question or whether it isn't a clarifying question, but goes through the statutes and suggests that in this particular case, since she was always an employee, the relationship was continuous, she was not laid off in any way. All she did was get a different job at different times that none of these statutes are applicable. Yes, and I think, Your Honor, that that is an improper. Why? Because of the Campos decision. You think the Campos decision suggests that Sullivan v. Kelly is wrong? Well, Campos is before Sullivan v. Kelly. That's what I mean. And I think Campos clearly stands for the proposition that an indefinite layoff, that is a layoff for an indefinite period with no fixed or determined date of recall, is the equivalent of a discharge. There's nothing in this record to suggest she was laid off. Well, Your Honor, what In this record it suggests that she was through one temporary assignment, was still continually employed, and then given another temporary assignment on a different situation. Nobody said you're through, you're absolutely through at this work. You're not, Severian is not laying you off. Severian is always looking for you a job. You're looking for a job. We're continuously have you here. You're not laid off at all. I understand that, Your Honor. And we think that that conclusion in Sullivan contradicts the controlling law, which is Campos and the DLSC opinion letters directed to temporary agencies. Well, the opinion letters, they're not controlling at all. The only controlling case we have are cases that are something up the line for me. So I'm looking at, here I have a district court case which pretty well lays out this case and says these statutes are not applicable. And what the department says is not controlling at all. Well, I agree, Your Honor. I think Campos, though, is very persuasive. Campos has not been overruled since 1982. For almost 25 years it's been the law. And so if you say to someone, we don't have work for you now, let's try and find some work for you in the future. She was hired as a temporary employee to work temporarily for different employers, wasn't she? Correct. So there's always going to be some gap. Well, and the point is. . . There's nothing that says that gap is a layoff. Not Campos, not any case. Cite me the case that says that is a layoff. Well, Your Honor, I'm. . . You think Campos says that was a layoff? I think it says an indefinite layoff, a layoff with no fixed. . . If you don't have a fixed or determined date of recall, that is the equivalent of a discharge. Okay. Thank you. You've used your time. Thank you very much. And, of course, we do agree with Sullivan insofar as it refers to the other aspect. I appreciate that. Thank you so much. Some part of Sullivan is good. I'm not trying to say that's bad. I'm just saying some part is good. Thank you very much. Good morning, Your Honor. I'm Jeffrey Warwin. I'm here with my partner, Michael Gallion, and I'll be talking about the off-the-clock and to the extent that the Court has any questions about the paste of 226 issue. Mr. Gallion will be talking about the 201 issues that Mr. Harris was just referring to. You're both getting paid for your time? I'm sure our client will split it 50-50, so we'll work it out. You don't have to feel compelled to use it all. Thank you very much. With regard to the off-the-clock claim in particular, the primary issue and the main issue is exactly what the panel was asking about and what Judge Collins was focused on, which is the testimony that was given. See, I find that hard to accept. If an employee comes in and doesn't know that she's supposed to, as a matter of law, be paid, she's not going to be the one that's supposed to raise it. The employer is supposed to know that. And she could quite honestly believe that when she's filling in, she's not asked to put down time. She looks at it as she's being brought in and then put out to work for Warners. So for her to say that, yes, I was paid for all the time I put on my timesheets and all of that, that if she doesn't know that, as a matter of law, she was entitled to two hours of show-up time or whatever, I can't say that her deposition testimony is inconsistent with that at all. Unless ignorance of the law somehow precludes her from making a claim for it. Do you agree with that? Your Honor, in this particular case, I think it's different than that. We've got an employee who is told and who acknowledges that she is to report all the time that she's working. And that's not a legal question. No, no, no. Wait a minute. You know, she's not getting paid for you when she's not at Warner Brothers, right? She's not getting paid for when she's not at Warner. Well, she's getting paid for the time that she puts on her – for the time that she – No, my question is, if she is not – she's in the hiatus between the assignments at Warner when Spherian is out looking and she's supposedly looking as well for the next assignment. She's not going to get paid for that, is she? Well, respectfully, Your Honor, there is no evidence of that. I'm sorry. The question is, what is your Spherian's position? Is she going to be getting paid for that time? I think the answer to your question, Your Honor, is that she's paid for the time that's reported. Okay. So if she put down – she leaves Warner Brothers yesterday. She spends today and Monday and Tuesday calling people and doing whatever. And she writes down on that pay stub when she gets her employment at Warner Brothers again next Wednesday. If she had put down, I am claiming time just the way lawyers do, okay? I made phone calls. I bill in 15-minute increments. Therefore, I've spent three minutes. I write down 15 minutes for my calling time. And she puts in a pay stub with Spherian that shows – I put in X hours last week or during the week at Warner's, and I put in an hour and a half setting up this employment. Spherian would have paid her for that. Based on the record that's before this Court, I can't answer that question, Your Honor, because there is no evidence in the record whatsoever that any employee, and particularly Ms. Elliott, reported any such time. Why would they if it's not expected of them that they'll get paid? Why would I write something down if I think that my Spherian is only paying me for the time that I'm actually working at the placement? Your Honor, that case could come up at some point. But there is no evidence in the record in this case that that's what happened. And in this case, there's nothing on the face of the complaint, as you asked about, that would indicate that that was what was going on. There is nothing that has been substantiated, and that's why in this particular case we don't need to get to that issue. And why it was very clear in the record that there was indeed a contradiction of original testimony. Because what Ms. Elliott testified to was that she knew that she was to report the hours that she was spending. And I appreciate that. Spending what? The hours she spent doing what? Working, Your Honor. Working for whom? For her company, Spherian, her employer. And she did not report. She either didn't report the hours or she did report the hours. There's no evidence even in the record about the reporting aspect of this. The only thing in the record is that she acknowledges that she knew she was supposed to report her hours, that she reviewed the time that she spent, the time that she was reported, and that she was paid for all of that. I take it that regardless of what she testified to with respect to reporting, that there's never put you on notice that she was making a claim for this hour? There's certainly nothing. Up until? There's certainly nothing in the complaint. There's nothing in the complaint about that. There was nothing in her deposition testimony about that. And the first time there's evidence about that issue is when she is opposing summary judgment and submits a declaration. Declaration. And opposition to the motion for summary judgment. Exactly. And counsel says that before that there was something put forward in connection with the putative class about. Yeah. Well, I'll respond to that in two ways. There's nothing in the record before this Court about the class certification motion that wasn't submitted as part of the record. But the class certification briefings were filed in conjunction and at the same time and were scheduled to be heard at the same time as the summary judgment. As of the summary judgment, per her declaration and per what was before the district court and the district court considered in her summary judgment ruling, the issue of whether she should be paid for the hour was before you and before the court. As of the hearing? As of the summary judgment. You know, at that point, yes. As of the hearing on the summary judgment motion, the issue had come up because she raised the declaration. Okay. Yes, Your Honor. I want to give sufficient time for the 201 claims, but if there are any further questions regarding the off-the-clock issue, I'm happy to entertain those. And given that they're not, the other issue that I'm here to discuss is the Section 226 claims. But I think that on the papers, those issues are fairly clear. There was at best a technical violation, and frankly, we believe there was no violation. Clearly, Ms. Elliott was not injured in any way, and she would need to suffer injury in order to get anything for that under Section 226E. With that, I'll turn to my colleague and let him discuss the Section 201 issues. Good morning, Your Honors. To start off with the Section 201 claim, the panel was discussing with Mr. Harris whether or not the statutes are relevant, any of the statutes 201, to the staffing industry. I think that's exactly one of the main points. They weren't relevant. There's no case law saying they were relevant, and there wasn't any case law saying they were relevant at the time in question in this lawsuit. The one overriding point that I want to make sure I focus the Court's attention on is regardless of how the Court comes down in terms of whether 201.3 was a clarification of the law, and regardless of what the Court thinks about the discharge issue, there's one issue that forecloses her claim and does not even require the Court to get to those issues, and that one issue is whether or not Sperion's conduct was willful. If they cannot establish the conduct was willful, then Sperion has a defense. If Sperion believed in good faith that was complying with the law, then Sperion wins the argument and Ms. Elliott's 201 claims fail. On summary judgment? Absolutely. I would draw the Court's attention to a couple of things. Number one, it is the recent case, the Sentos case, makes clear another summary judgment case where the Court analyzed whether or not confusion in the law, whether ambiguity in the law, would be enough to allow the or whether that was enough to give the employer a good faith defense that it was operating within the law. Similarly here, we believe that at the time it was clear that Sperion was following the law. At a minimum, we believe that the law, at a minimum we believe that there was ambiguity in the law and that the record before the Court as well as the authorities that have been cited certainly gave Sperion a good faith belief that it was doing the right thing. Based on the Sentos case, based on the labor code, and based on the regulations, if Sperion establishes that it had a good faith belief, willfulness cannot attach. Did the district court make that a finding? I can't remember. Judge Collins did not make that a finding. It is not in her ruling. She ruled specifically on two other grounds that, number one, the state of the law at the time that predated the enactment of Section 201.3 as well as the undisputed record in the case, in Ms. Elliott's case, established that the end of all these assignments, I think Ms. Elliott had 15 or more when she was at Sperion, did not equate to a discharge under the labor code. Secondarily, Judge Collins ruled that the passage of Section 201.3 only confirmed that point, that there were two bases, that, number one, the law was clear enough before. Sperion relied on that law, and based on the facts, all the communications between the parties, the documents that are in evidence, it was clear that Sperion and Ms. Elliott believed that her employment was continuous, although intermittent. Opposing counsel has offered nothing to the contrary, no evidence in the record, and no controlling or even persuasive authority. The only issue that is before the court is a misreading of the L'Oreal case. The L'Oreal case is a fundamentally different case than we have here. L'Oreal involved a one-day hair model who performed a discreet, limited assignment. She was hired for the assignment. She was told on the front end what she'd be paid for the assignment. She was told how long the assignment would last and when the assignment would end. In addition, as Judge Collins found persuasive, in the L'Oreal decision, the court underscored the fact that all of that was in place, and in addition, it was important that the employer specifically released the employee. We don't have anything here. This case couldn't be more different. Number one, it's a different industry. Number two, there were multiple assignments. Number three, there was continuous and intermittent employment. All the communications between the parties confirm that, and there's been no evidence put forth to the court to the contrary. If the court would like to ask any questions on this claim. I don't appear to be in. All right. Well, does the court have any questions at all? All right. Well, I will take your cue, and we will not take up all of our time. Thank you. Thank you. Are there any questions? Can I have just ten seconds? Okay. The motion for summary judgment was filed September 10, 2007, and the Riley deposition of the defense employee at which we discussed all this orientation issue was April 26, 2007. So it was all. I'm sorry. Say that again. What's the sequence? The Riley deposition at which I asked Ms. Riley about the time spent at orientation and establishing that that was work was done April 26, 2007. That referred to the time on September 5th, before she had any time cards and for which she did not get a wage statement. The motion for summary judgment was filed five months later in September of 2007. Thank you. Thank you very much.
judges: Schroeder, Fisher, Smith N. R.